UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
SCOTT LEO,

                            Plaintiff,                            **MEMORANDUM & ORDER**

                     - against -                            13 CV 2271 (RJD) (JMA)

NEW YORK CITY DEPARTMENT
OF EDUCATION, et al.,

                          Defendants.
------------------------------------------------------------ x

DEARIE, District Judge.

        Plaintiff Scott Leo brings this action against the New York City Department of Education ("DOE") and Joseph Attilio pursuant to 42 U.S.C. § 1983 seeking redress for retaliation in violation of his First Amendment rights. Leo also sues for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law, N.Y. Executive Law § 296 et seq., the New York City Human Rights Law, N.Y. City Administrative Code § 8-108, and for intentional infliction of emotional distress under New York law. Defendants have moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint on the grounds that Leo's claims are barred by res judicata and/or collateral estoppel, because he has failed to satisfy certain statutory prerequisites to suit, and because he has failed to plead plausible claims. For the following reasons, defendants' motion to dismiss is granted.

## BACKGROUND[1]

Leo was a probationary English teacher at Information Technology High School ("ITHS") from August 2008 until September 2011. He was hired by Nancy Casella, ITHS's

---

[1] Unless otherwise indicated, the following facts are drawn from the complaint and are accepted as true for purposes of this motion. LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009).

principal, who had taught Leo in college and had recruited him to join the ITHS faculty. For the 2008-2009 and 2009-2010 school years, Casella issued Leo overall satisfactory end-of-year performance reviews.

On October 29, 2010, the DOE relieved Casella of her position. Casella's removal was based on allegations filed by Joseph Attilio, an assistant principal at ITHS. Following Casella's removal, the chapter leader of the teachers' union – who was also Attilio's cousin – circulated a petition to fill the vacant principal position with an in-house assistant principal. Leo refused to sign the petition on November 2, 2010 "for his own personal reasons."

According to the complaint, because of Leo's refusal to sign the petition, and because he had supported Casella at a hearing prior to her removal, he was harassed by Attilio "on a daily and weekly basis." On November 4, 2010, Attilio conducted a "bogus impromptu" observation of Leo's classroom lesson without giving Leo notice or scheduling a pre-observation meeting. Leo's lesson asked students to identify how different ethnic groups are portrayed in the media. The following day, when Attilio held a post-observation conference with Leo, he deemed the lesson "distasteful" and rated it "unsatisfactory." Attilio also reminded Leo that his probationary period was soon ending and that his eligibility for tenure was approaching. In concluding the meeting, Attilio gave Leo a list of "rigorous requirements" that Leo was forced to comply with. Leo alleges that he met these requirements and subsequently received four "satisfactory" classroom reviews. While Leo kept a log detailing Attilio's harassment, the only other allegation of harassment in the complaint is that during the administration of the regents exams, Attilio assigned more proctoring assignments to Leo than any other teacher.

As the end of the school year approached, on May 9, 2011, Patricia Martin, the acting interim principal, attempted to "coerce" Leo into signing an agreement to extend his

probationary period. Leo refused. On June 27, 2011, Leo received an "unsatisfactory" rating on his annual performance review. Among other things, the performance review lists Leo's refusal to sign the extension of probation as a reason for the "unsatisfactory" rating. On July 9, 2011, Leo received a letter terminating his employment and placing him on the DOE's ineligible list. Leo alleges that he is an excellent teacher and that his termination was "pure retaliation."

Leo filed a notice of claim with the DOE on August 4, 2011, a copy of which has since been included in Leo's briefing. On October 18, 2011, the DOE held a hearing to review Leo's claim and sustained the decision to terminate his employment. Leo's termination was reaffirmed by the superintendent on April 20, 2012.

Though the complaint does not reference the fact, on December 13, 2011, Leo commenced an Article 78 proceeding in New York Supreme Court, appearing pro se, challenging the termination of his employment, his "unsatisfactory" performance review, the revocation of his teaching certification, and his placement on the ineligible list. The DOE cross-moved to dismiss, and on March 21, 2012, the Supreme Court granted that motion. Leo v. New York City Dept. of Educ., No. 113955/2011, 2012 NY Slip Op 30735(U), 2012 N.Y. Misc. Lexis 1354 (Sup. Ct., N.Y. Cty. Mar. 21, 2012). The record in the Article 78 proceeding was considerably more detailed than the instant complaint. In her opinion, Judge Kerns quotes from "evidence supporting [Leo's] unsatisfactory rating" such as classroom observation reports and letters from Attilio and Martin, and also relies on the testimony from Leo's DOE Office of Appeals and Reviews ("OAR") hearing held on October 18, 2011. Id. at *3-9. For instance, the observation report "details" how Leo's lesson on stereotypes was "distasteful and inappropriate" and caused "several students . . . to feel uncomfortable," and that Leo's lesson plan for the class "appeared to be a 'half-finished draft' on his mobile phone" showing "'nothing alluding to

higher-order questioning,' ... and it did not make 'any provisions for an evaluation of how well [Leo's] students could demonstrate the mastery of the [lesson's] aim.'" Id. at *4. The letters "further detailed" Leo's "hostile attitude" toward administrators and an incident where Leo began "screaming" at a co-worker. Id. at *6. At the OAR hearing, Principal Martin "explained how the effort required to properly prepare [Leo] to deliver a lesson was 'very expensive,' necessitating numerous pre-observation meetings and rewriting of petitioner's lesson plans" and stated that Leo "demonstrated 'unprofessional' characteristics, including being 'evasive' when supervisors discussed his ability to deliver a lesson." Id. at *8. Leo even "admit[ted] to falsely telling ITHS administrators that he had been discussing his issues with an individual at . . . the DOE's central headquarters, hoping that ITHS administrators 'would be scared.'" Id. at *6. On the basis of that record, the Supreme Court concluded that Leo did not satisfy "his burden of showing that the termination of his probationary teaching position was in bad faith." Id. at *12. As the Supreme Court reasoned:

> While petitioner asserts that he was subject to "harassment" by administrators making "political" moves, he does not provide any factual allegations supporting his speculative reasons behind ITHS's decision to terminate him. The DOE terminated petitioner based on petitioner's overall [unsatisfactory] rating for the 2010-2011 school year, the unsatisfactory classroom observation conducted on November 4, 2010, petitioner's strained relationship with other teachers and his supervisors, petitioner's unprofessional attitude toward ITHS administrators, including his refusal to agree to an extension of his probationary period and the supporting testimony of Principal Martin and [assistant principal] Attilio at petitioner's OAR hearing. As petitioner has not demonstrated that the DOE's actions were taken in bad faith, that portion of petitioner's petition challenging his termination as a probationary teacher must be denied.

Id. at 12-13. The court also denied the portion of Leo's petition seeking to challenge his "unsatisfactory" rating as premature since the chancellor of the DOE had not yet denied his

4

appeal. Id. at 13.

The Appellate Division affirmed the Supreme Court's decision on November 20, 2012, stating that "the court correctly sustained [the revocation of Leo's teaching certification, the placement of his name on the ineligible/inquiry list,] and the determination terminating petitioner from his probationary employment because petitioner failed to establish that his termination was done in bad faith." Leo v. New York City Dept. of Educ., 100 A.D.3d 536, 536-37 (1st Dep't 2012). The First Department added that "the record contains evidence of good faith on respondent's part—for example, Principal Martin's intention was not to terminate petitioner's employment but to extend his probation for an additional year—as well as evidence of deficiencies in petitioner's performance." Id. at 537. The Appellate Division also found that the challenge to the "unsatisfactory" rating "was premature because [Leo] did not exhaust his administrative remedies." Id.

On April 15, 2013, through counsel, Leo filed the instant suit, alleging that he was terminated for exercising his First Amendment rights. Defendants moved to dismiss on October 28, 2013.[2]

## DISCUSSION

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Brown v. Daikin Am. Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[2] Leo argues that the motion is a "procedurally nullity" because, he contends, it was served two days late and defendants have previously failed to comply with prior deadlines. This Court has previously expressed its displeasure with defendants' late requests for extensions. See October 28, 2013 Order, ECF No. 12. But in this instance, it is not clear that the motion was served late. While the letter serving the motion was not filed on ECF until October 31, 2013, the letter and the motion itself are dated October 28, 2013. The parties also disagree on the date of the service, and defendants have represented that the motion was deposited in the mail on October 28, 2013. The Court, therefore, declines to rule the motion untimely.

5

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In assessing a motion to dismiss, a court may consider the facts and allegations in a complaint and take judicial notice of "public records, including complaints filed in state court." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

"Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994). Dismissal on the basis of res judicata or collateral estoppel is appropriate if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000). Defendants argue that the ruling in the Article 78 proceeding should have preclusive effect in this action and requires dismissal of Leo's claims. The preclusive effect of a New York state court judgment is determined by New York law. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)). There are two separate types of preclusion: claim preclusion and issue preclusion. "Claim preclusion 'forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Diaz v. Judge Advocate Gen. of the Navy, 413 F. App'x 342, 343 (2d Cir. 2011) (summary order) (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Id. (quoting Taylor, 553 U.S. at 892). Defendants argue that Leo's suit is barred by both claim and issue preclusion.

6

A.  Claim Preclusion

Claim preclusion, or res judicata, provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist., 506 F. App'x 65, 67-68 (2d Cir. 2012) (quoting Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997)). Thus, "[o]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Ferris v. Cuevas, 118 F.3d 122, 126-27 (2d Cir. 1997) (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688 (1981)). Here, the litigation concerns the same "transactions or series of transactions" at issue in the Article 78 proceeding, and the decision in that proceeding was a final and on the merits. The present litigation also involves the same parties as in the Article 78 proceeding, and while Attilio was not previously a party, as an "employee[] of the school district, the principle of privity bars relitigation of these claims" against him as well. Malcolm, 506 F. App'x at 68.

That said, this Court cannot conclude that the instant claims are barred by res judicata. "[A] New York plaintiff is not barred from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding requesting injunctive or affirmative relief. The reason is that damages are not available in these circumstances in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suits such as this one." Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987) (citing Davidson v. Capuano, 792 F.2d 275, 278-82 (2d Cir. 1986), and Giano v. Flood, 803 F.2d 769, 770-71 (2d Cir. 1986)). Because Leo could not have received damages for violations of his civil rights in the Article 78 proceeding, his damage claims are not barred by res

7

judicata. However, because reinstatement and removal from the ineligible list were remedies available in the Article 78 proceeding, Leo's claims for that relief are barred by res judicata. See Fay v. S. Colonie Cent. Sch. Dist., 802 F.2d 21, 30 (2d Cir. 1986) (plaintiff "could have litigated his claims for injunctive relief in the Article 78 proceeding and is therefore barred from doing so now, he is not barred from pursuing his claims for damages"), overruled on other grounds by Taylor v. Vermont Dep't of Educ., 313 F.3d 768 (2d Cir. 2002).

B.  Issue Preclusion

Issue preclusion, also known as collateral estoppel, "may bar consideration in § 1983 cases of an issue that was previously decided in Article 78 proceedings, provided that the plaintiff raised the issue and the issue was 'actually and necessarily' decided by the state court." McGuinn v. Smith, 523 F. App'x 764, 766 (2d Cir. 2013). The doctrine "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007). The parties, however, need not be identical in both actions for issue preclusion to apply. See Faulkner v. Nat'l Geographic Enterprises Inc., 409 F.3d 26, 37 (2d Cir. 2005). Nor do the two suits have to be "based on the same cause of action." Postlewaite v. McGraw-Hill, 333 F.3d 42, 48 (2d Cir. 2003). And while Article 78 proceedings may not bar actions of damages under the principles of res judicata, issue preclusion applies regardless of what relief was available to a party previously. See Giakoumelos v. Coughlin, 88 F.3d 56, 61 (2d Cir. 1996); Carlen v. Dep't of Health Servs., 104 F.3d 351 (2d Cir. 1996). Applying this doctrine here, Leo's claims are precluded by the prior proceeding.

First, Leo had a full and fair opportunity in the Article 78 proceeding to litigate whether

8

his termination was retaliatory or done in bad faith. As a general matter, the Second Circuit has held that Article 78 proceedings afford plaintiffs "full and fair opportunity" to litigate issues. See Constantine v. Teachers Coll., 448 F. App'x 92, 94-95 (2d Cir. 2011) (noting that discovery is available in an Article 78 proceedings and failure to conduct discovery "does not render the proceeding unfair"). In the Article 78 proceeding relating to Leo's termination, the Supreme Court considered the petition filed by Leo, the report from Leo's classroom observation on November 4th, a letter from Attilio "detailing" Leo's inability to follow instructions and maintain good relationships, a letter from Martin "detailing" Leo's unprofessional attitude, an admission from Leo relating to his unprofessional behavior, and "supporting testimony" from the OAR hearing. Leo, 2012 N.Y. Misc. Lexis 1354, at *3-9. All of the facts alleged in Leo's complaint suggesting bad faith conduct, retaliation, or discrimination were also offered at the Article 78 proceeding. In fact, despite the fact that Leo proceeding pro se in that case, the record was *more* developed as it contained evidence and testimony from witnesses.[3]

Second, the issues decided in the Article 78 proceeding are decisive of those raised in Leo's complaint. In the Article 78 proceeding, Leo challenged his "unsatisfactory" rating, termination, license revocation, and placement on the ineligible list on the grounds that those acts were in "bad faith" and were "'harassment' by administrators making 'political' moves." Id. at *13. These are "the very allegation[s] [he has] relied on in the federal action here." Constantine, 448 F. App'x at 95. The Supreme Court found that Leo's "unsatisfactory classroom observation," his "strained relationship with other teachers and supervisors," and his "unprofessional attitude toward ITHS administrators" evidenced that Leo was not terminated in

---

[3] The fact that Leo previously appeared pro se does not mean he did not receive a full and fair opportunity to litigate these issues. See Buford v. Coombe, 199 F.3d 1321, at *2 (2d Cir. 1999).

9

bad faith. Leo, 2012 N.Y. Misc. Lexis 1354, at *12-13. Affirming that decision, the First Department concluded that "the record contains evidence of good faith on [defendants'] part . . . as well as evidence of deficiencies in [Leo's] performance" and therefore Leo's allegation of "bad faith" lacked merit. Leo, 100 A.D.3d at 537. These determinations, based on the same facts pled in Leo's complaint (and the additional evidence available to the court in the Article 78 proceeding), preclude Leo from prevailing on his claims of retaliation or bad faith termination here. See Roemer v. Bd. of Educ. of City of New York, 150 F. App'x 38, 39-40 (2d Cir. 2005) (plaintiff's claim against the DOE was collaterally estopped where "a hearing found that he was terminated for cause" and that "finding rebuts any claim that [his] discharge was executed in retaliation for the exercise of any First Amendment right"). Leo contends that the issues are not identical because the present suit raises civil rights violations (namely, violations of his First Amendment rights), but the "preclusive effect of the prior litigation is not affected by the fact that these issues were not previously phrased in constitutional terms." McBride v. Bratton, 122 F.3d 1056, at *2 (2d Cir. 1997).[4]

Leo rightly points out that the First Department deemed his challenge to his "unsatisfactory" rating "premature" because he had not exhausted administrative remedies, and therefore that issue was not *explicitly* decided. See Angrisani v. City of New York, 639 F. Supp. 1326, 1332 (E.D.N.Y. 1986) (because the "Article 78 proceeding was dismissed due to plaintiff's failure to exhaust . . . neither claim nor issue preclusion prevents plaintiff from pursuing his case"). "The prior decision of the issue need not have been explicit, however, '[i]f by necessary

---

[4] Leo suggests that the complaint also alleges discrimination on the basis of national origin. There are only two sentences in the complaint, both wholly conclusory, that mention discrimination on such a basis, and therefore the Court considers this a mere repackaging of the same issues in different constitutional terms. To the extent Leo attempts to allege a separate discrimination claim relying on different facts, that claim is dismissed for failure to plead a plausible claim for relief.

10

implication it is contained in that which has been explicitly decided.' If the decision was implicitly necessary, it will be the basis for collateral estoppel.'" Postlewaite, 333 F.3d at 48 (quoting Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281, 1285 (2d Cir. 1986)). Such is the case here. The First Department concluded that Leo "failed to establish that his termination was done in bad faith" as there was "evidence of good faith" by defendants and "deficiencies" in Leo's performance. Leo, 100 A.D.3d at 537. The conduct that Leo alleges caused his "unsatisfactory" review is the same conduct that the Article 78 proceeding and the Appellate Division deemed not in bad faith. In fact, because the "DOE terminated [Leo] based on [his] overall U-rating for the 2010-2011 school year," Leo, 2012 N.Y. Misc. Lexis 1354, at *13, among other things, the court's decision that the termination was not in bad faith *necessarily implies* that the "unsatisfactory" rating was also not in bad faith. See Latino Officers Ass'n v. City of New York, 253 F. Supp. 2d 771, 786-87 (S.D.N.Y. 2003) (in finding "substantial evidence" to support a police officer's termination, the court "necessarily implied rejection of [the plaintiff's] claim that his termination was discriminatory and retaliatory").

Accordingly, because the Article 78 proceeding actually decided the issues of whether there was "bad faith" or "harassment" involved in his termination, license revocation, and placement on the ineligible list, Leo is now precluded from relitigating those issues. As the resolution of those issues disposes of Leo's claims, it is unnecessary for this Court to consider the defendants' additional grounds for dismissal. That said, it is indeed doubtful that Leo has sufficiently pled a § 1983 claim. This action is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
November 17, 2014

/s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge